[No. F032173. Fifth Dist. Apr. 28, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LOU TONG SAEPHANH, Defendant and Appellant.

COUNSEL

Tamara C. Barnett, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

HARRIS, J.—

### STATEMENT OF THE CASE

A single-count information filed on August 12, 1998, in Kings County Superior Court charged appellant Lou Tong Saephanh with solicitation of

murder in violation of Penal Code[1] section 653f, subdivision (b). On October 7, 1998, after a two-day jury trial, appellant's motion for acquittal pursuant to section 1118.1 was denied, and appellant was subsequently found guilty.

On November 5, 1998, after consideration of the probation officer's report, the court denied probation. The court sentenced appellant to the upper term of nine years. On November 23, 1998, appellant filed a notice of appeal.

FACTS

In October and November 1997, appellant had consensual sexual intercourse with Cassandra Y. Cassandra became pregnant and, in January 1998 while appellant was in prison, she informed appellant of her pregnancy. Appellant first asked if the baby was his and, when told it was, exclaimed, " 'Oh, I've been wanting a baby for a long time.' " Cassandra and appellant spoke about the baby every week and appellant was excited.

In May 1998, while still incarcerated, appellant wrote a letter dated May 22, 1998, to his friend and fellow gang member Cheng Saechao, also known as O. Dee. In pertinent part, it stated, "By the way loc, could you & the homies do me a big favor & take care that white bitch, Cassie for me. ha, ha, ha!! Cuzz, it's too late to have abortion so I think a miss carrage would do just fine. I aint fista pay child sport for this bull-shit loc. You think you can get the homies or home girls do that for me before she have the baby on Aug. '98" (*Sic.*) At the time he wrote the letter, appellant was upset. He did not want to pay child support.

Vicki Lawrence, a correctional officer at Corcoran State Prison working for the investigative service unit, testified that when an indigent inmate wishes to send a letter, he puts it into a night drop for processing through the mail room where the letter is stamped for delivery. Lawrence found the letter in her "in box." The investigative unit reviews inmate correspondence placed in the institution's mail system. According to Lawrence, she opened and read the letter appellant had written. She immediately notified her supervisor, Sergeant Basinger. The letter was thus intercepted by the institution's internal investigative unit and never reached the addressee.

Rick Bellar, an investigator with the Kings County District Attorney's Office, read a copy of the letter that Basinger provided him and thereafter interviewed Cassandra, Cheng Saechao and appellant. Bellar interviewed appellant on June 2, 1998, at Corcoran State Prison. Appellant admitted

---

[1]All unspecified statutory citations refer to the Penal Code.

writing the letter and that he was serious when he wrote it. Appellant told Bellar that when he wrote the letter, he was thinking that if Cassandra did not let him be a part of the baby's life, he wanted to "get rid of the baby." Appellant did not want to pay child support. Appellant was angry because Cassandra did not seem to love him, and there was an argument in which Cassandra told appellant he could not see the baby. Appellant expected Saechao and other gang members to punch Cassandra in the stomach during a fight or have her fall, thereby causing a miscarriage.

Appellant told Bellar he later called Saechao and told him to ignore the letter, but Saechao did not know what letter appellant was talking about.

Appellant presented no evidence on his behalf.

DISCUSSION

I.

*The Solicitation Conviction*

 Appellant contends there is insufficient evidence to support his conviction for solicitation of murder because the evidence establishes that the soliciting communication was not received by the intended recipient and, in fact, establishes no one was solicited. He asserts that California's solicitation statute, section 653f,[2] requires proof of a completed communication. He suggests a "completed communication" occurs only when the intended recipient of the communication receives it.

Appellant acknowledges no published California case has so held and notes the issue is one of first impression in California. According to appellant, however, "two other states which have considered the issue under solicitation statutes similar to [California's section 653f], Oregon and New Mexico," concluded solicitation requires a "completed communication," i.e. one which was received by the intended recipient. He contends these authorities should be applied in California.

In *State v. Cotton* (1990) 109 N.M. 769 [790 P.2d 1050], the defendant was convicted of two counts of criminal solicitation. While he was incarcerated in New Mexico, he wrote two letters to his wife in Indiana suggesting that she warn their daughter not to testify against defendant on molestation

---

[2]Section 653f, subdivision (b) provides: "Every person who, with the intent that the crime be committed, solicits another to commit or join in the commission of murder shall be punished by imprisonment in the state prison for three, six, or nine years."

charges and that she persuade their daughter to leave New Mexico and go to Indiana. Neither letter ever reached defendant's wife, both having landed in the hands of law enforcement. On appeal, the defendant claimed insufficient evidence to support the solicitation convictions because the letters never reached the intended recipient, the defendant's wife. (*Id.* at p. 1051.)

The New Mexico Court of Appeal agreed. First, it noted that New Mexico's criminal solicitation statute "adopts in part, language defining the crime of solicitation as set out in the Model Penal Code promulgated by the American Law Institute." (*State v. Cotton, supra,* 790 P.2d at pp. 1052-1053.)[3] The court distinguished New Mexico's statute from the Model Penal Code, noting that New Mexico's solicitation statute "specifically omits that portion of the Model Penal Code subsection declaring that an uncommunicated solicitation to commit a crime may constitute the offense of criminal solicitation. The latter omission, we conclude, indicates an implicit legislative intent that the offense of solicitation requires some form of actual communication from the defendant to either an intermediary or the person intended to be solicited, indicating the subject matter of the solicitation." (790 P.2d at p. 1053, fn. omitted.) Thus, by adopting in part the Model Penal Code section defining solicitation but omitting language from that section criminalizing uncommunicated solicitations, the New Mexico Legislature intended that the New Mexico statute not criminalize uncommunicated solicitations.

The court observed that one scholar suggests uncommunicated solicitations may have to be prosecuted as attempted solicitation. (*State v. Cotton, supra,* 790 P.2d at p. 1054.) The court rejected the state's argument that uncommunicated solicitations nonetheless constitute solicitations because New Mexico's criminal solicitation statute expressly provides that one is guilty of solicitation where he " 'otherwise attempt[ed] to promote or facilitate another person to engage in conduct constituting a felony . . . .' "

---

[3]According to the opinion, New Mexico's criminal solicitation statute provided, in pertinent part:

" '[A] person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a felony, he solicits, commands, requests, induces, employs or otherwise attempts to promote or facilitate another person to engage in conduct constituting a felony . . . .' " (*State v. Cotton, supra,* 790 P.2d at p. 1052; see N.M. Stat. Ann. § 30-28-3(A).)

Model Penal Code section 5.02 provides in pertinent part:

"(1) A person is guilty of solicitation to commit a crime if with the purpose of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct that would constitute such crime or an attempt to commit such crime or would establish his complicity in its commission or attempted commission.

"(2) It is immaterial under Subsection (1) of this Section that the actor fails to communicate with the person he solicits to commit a crime if his conduct was designed to effect such communication."

(*Ibid.*) The court declined to read that provision "so broadly." (*Ibid.*) The court reversed the judgment. (*Id.* at p. 1055.)

In *State v. Lee* (1991) 105 Or.App. 329 [804 P.2d 1208], the Oregon Court of Appeal reached a similar result. There, the defendant, while in jail, wrote letters to an acquaintance in a juvenile center outlining plans to rob a store and residence. Authorities in the juvenile center intercepted the letters, which never reached the intended recipient. The defendant was convicted of solicitation to commit robbery. On appeal, he argued lack of evidence to sustain the conviction because the letters were never received by the intended recipient.

Citing *Cotton* and apparently following its reasoning, the Oregon court noted Oregon's criminal solicitation statute[4] "was based, in part, on the Model Penal Code." (*State v. Lee, supra,* 804 P.2d at p. 1210.) As did the court in *Cotton,* the *Lee* court noted the omission of Model Penal Code language criminalizing uncommunicated solicitations in Oregon's criminal solicitation statute. "Significantly, the legislature did not adopt the provision of the Model Penal Code that specifically provides that solicitation may be based on an incomplete communication." (*State v. Lee, supra,* 804 P.2d at p. 1210.) The court concluded a completed communication is required to prove the crime of solicitation. The court determined attempted solicitation is a necessarily included offense of solicitation and remanded for entry of judgment of conviction on that crime. (804 P.2d at pp. 1210-1211.)

Respondent agrees no California authority has directly addressed the issue of whether one may be found guilty of solicitation where the intended recipient of the soliciting communication never received the message. Respondent notes there is a split in authorities from other jurisdictions addressing the issue.

In *People v. Lubow* (1971) 29 N.Y.2d 58 [323 N.Y.S.2d 829, 272 N.E.2d 331], cited by respondent, the New York court concluded that state's criminal solicitation statute included in the crime uncommunicated solicitations. The court noted the New York statute indicated one is guilty of solicitation if, with the intent another engage in criminal conduct, the defendant " 'solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct.' " (272 N.E.2d at p. 332.) The court

---

[4]According to the opinion, Oregon's solicitation statute provided: " 'A person commits the crime of solicitation if with the intent of causing another to engage in specific conduct constituting a crime punishable as a felony or as a Class A misdemeanor or an attempt to commit such felony or Class A misdemeanor the person commands or solicits such other person to engage in that conduct.' " (*State v. Lee, supra,* 804 P.2d at p. 1210; see Or. Rev. Stat. § 161.435(1) (1999).)

noted New York's statute stems from the Model Penal Code. (*Id.* at p. 333.) The court pointed to that portion of the New York statute stating one is guilty of solicitation if he solicits another to engage in criminal conduct, " 'or otherwise attempts to cause' " such conduct. (*Id.* at p. 334.) The court found "[t]his has the same effect as the Model Penal Code . . . ." (*Ibid.*) The court held, "[A]n attempt at communication which fails to reach the other person may also constitute the offense for the concluding clause 'or otherwise attempts to cause such other person to engage in such conduct' would seem literally to embrace as an attempt an undelivered letter or message initiated with the necessary intent." (*Id.* at p. 331.) Thus, the New York court reached a different conclusion as to the meaning of the "otherwise attempts" language in the New York statute than did the *Cotton* court as to the meaning of identical language in the New Mexico statute.

Does California's section 653f include in its ambit solicitations not received by the intended recipient? *Cotton* and *Lee* concluded the New Mexico and Oregon Legislatures intended their solicitation statutes to require a solicitation be received by the intended recipient for criminal liability to attach on the basis of the omission from their statutes of language contained in the Model Penal Code on which those statutes are based. Section 653f, enacted in 1929, is not based on the Model Penal Code. (See Model Pen. Code & Commentaries, com. 2 to § 5.02, p. 367 & fn. 11.) Thus, we disagree with appellant that *Cotton* and *Lee* examined "solicitation statutes similar to California's Penal Code section 653f," at least in terms of legislative history and intent. We find *Cotton* and *Lee* unpersuasive on the issue of whether section 653f criminalizes the making of soliciting communications not received by the intended recipient.

Likewise, *Lubow* provides no guidance on the issue because in that case the court noted New York's solicitation statute stems from the Model Penal Code. The court found that the "or otherwise attempts" language in the statute was akin to subsection 2 of Model Penal Code section 5.02. Section 653f, not derived from the Model Penal Code, does not contain attempt language.

As have the parties, we have located no California case squarely addressing the question of whether the intended recipient of a solicitation must receive the solicitation for liability to attach under section 653f.

Interpretation of a statute is a question of law which we review de novo. (*Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491 [80 Cal.Rptr.2d 175].) ■ In interpreting a statute we ascertain legislative intent to effectuate the purpose of the law. To determine intent, we look first to the language

of the statute, giving effect to its plain meaning. (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 860-861 [80 Cal.Rptr.2d 803, 968 P.2d 514]; *Fall River Wild Trout Foundation v. County of Shasta* (1999) 70 Cal.App.4th 482, 490 [82 Cal.Rptr.2d 705].)

As noted, section 653f, subdivision (b) provides: "Every person who, with the intent that the crime be committed, solicits another to commit or join in the commission of murder shall be punished by imprisonment . . . ."

 The plain language of section 653f, in particular the phrase "solicits another," demonstrates that proof the defendant's soliciting message was received by an intended recipient is required for liability to attach. The facts of this case are illustrative of the plain meaning of the statute. Here, appellant intended to ask Saechao and the "homies or home girls" to kill Cassandra's fetus. However, neither Saechao nor the "homies or home girls" ever received the soliciting message. Thus, appellant did not solicit Saechao or the specifically designated others.

Respondent nonetheless contends the harm is in the asking and suggests the crime of solicitation was complete when appellant "deposited the correspondence with the requisite criminal intent." According to respondent, solicitation has two elements, a request to do a crime and intent that it be completed. Thus, respondent asserts, "appellant's letter was the murder request and, when he dropped it off to be mailed, he possessed the requisite criminal intent, thus satisfying both the elements to criminal solicitation."

We disagree that the letter, never received by any person appellant intended to solicit, in itself constitutes a "request" as that term may be applied in interpreting section 653f. Evidence appellant wrote the letter to Saechao is insufficient to show appellant actually requested Saechao, or the "homies or home girls" commit murder, in the absence of evidence any one of them received the letter. This is so even though appellant posted the letter. The crime of solicitation defined by section 653f requires that two or more persons must be involved, at least one being necessarily a solicitor and the other necessarily being the person solicited.

We agree with appellant that solicitation requires a completed communication.

Respondent insists that even if solicitation requires a completed communication, Vicki Lawrence, the correctional officer, received the letter. In our view, this argument evades the issue of whether appellant "solicited another." Appellant did not ask Vicki Lawrence to kill anyone, or do anything for that matter. She was not a person solicited.

Section 653f has the twofold purpose of protecting the inhabitants of California from being exposed to inducement to commit or join in the commission of crimes and preventing solicitations from resulting in the commission of the crimes solicited. (*Benson v. Superior Court* (1962) 57 Cal.2d 240, 243 [18 Cal.Rptr. 516, 368 P.2d 116]; *People v. Burt* (1955) 45 Cal.2d 311, 314 [288 P.2d 503, 51 A.L.R.2d 948].) Uncommunicated soliciting messages do not expose others to inducements to commit crimes. Nor is there a likelihood that an uncommunicated message would result in the commission of crimes. Thus, letters posted but not delivered do not give rise to the dangers from which section 653f seeks to protect society.

However, messages urging commission of a crime which are received expose individuals to invitation to crime and create a risk of criminal activity. Criminalizing completed solicitations furthers the policies of protecting individuals from exposure to inducements to commit crimes and preventing commission of the crimes solicited. Thus, a conviction for a violation of section 653f requires proof that the person solicited received the soliciting communication. One cannot "solicit another" without a completed communication. The communication is only completed when it is received by its intended recipient.

Appellant did not ask Vicki Lawrence to kill Cassandra's fetus and appellant was unsuccessful in asking Saechao (or, for that matter, the "homies or home girls") to do so because his letter was intercepted. Appellant did not "solicit another" to commit murder within the meaning of section 653f, subdivision (b). Thus, his conviction for solicitation of murder cannot stand.

## II.

### *Attempted Solicitation*

■ Appellant next contends he is guilty of no crime. He asserts attempted solicitation is not a crime in California because there is no reference to attempt in section 653f. He cites other criminal and noncriminal statutes containing attempt language and suggests the absence of such language in section 653f is a clear manifestation of legislative intent attempted solicitation is not a crime.

We disagree. "Every person who attempts to commit *any crime*, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, . . ." (§ 664, italics added.) Solicitation is a crime, and thus falls within section

664, which applies to the attempted commission of any crime. The plain language of section 664 makes clear the Legislature is aware of specific provisions regarding attempt in the context of some crimes, and it expressly applies to those crimes which do not address attempt. Attempted solicitation of murder is a crime in California.

Appellant insists that attempted solicitation cannot be a crime because, according to appellant, solicitation is an attempt crime in itself—attempted conspiracy. Appellant compares the relationship between attempt and assault to the relationship between attempt and solicitation, noting attempted assault is not a crime. Appellant relies on *In re James M.* (1973) 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33].

In *In re James M.*, the Supreme Court held that attempted assault is not recognized and punishable as a crime in California. The court noted that at common law and under section 240, assault is defined as an attempted battery.[5] The court stated, "the abstract concept of an attempted assault is not necessarily a logical absurdity." (*In re James M., supra,* 9 Cal.3d at p. 521.) However, the court held attempted assault is not a crime in California because, inter alia, "no offense known as attempt to assault was recognized in California at the time that statutory definition of assault was adopted." (*Id.* at p. 522.) The court pointed out "attempt" was omitted from the original statutory definition of assault and noted neither section 664 nor its predecessor had been enacted at the time the predecessor to section 240 was enacted. The court found a clear manifestation of legislative intent "for an attempt to commit a battery without present ability to go unpunished." (*In re James M., supra,* 9 Cal.3d at p. 522.) The court rejected the contention that attempted assault is made criminal under section 664 because "the legislative intent not to punish batteries attempted without present ability prevails over the general criminal attempt provisions of section 664." (9 Cal.3d at p. 522.)

*In re James M.* should not be interpreted to hold that the absence of language specifically criminalizing attempt within any statutory definition of an offense indicates a specific legislative intent not to punish an attempt to commit the offense, which legislative intent prevails over the general provision in section 664. Otherwise, section 664 would be meaningless.

It does not necessarily follow that every solicitation is an attempted conspiracy. The crime of solicitation is complete when the solicitation is made, i.e., when the soliciting message is received by its intended recipient. It is immaterial that the object of the solicitation is never consummated, or

---

[5]"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

that no steps are taken towards its completion. (*People v. Cook* (1984) 151 Cal.App.3d 1142, 1145 [199 Cal.Rptr. 269].) Unlike assault, which is statutorily defined as an attempted battery, section 653f makes no mention of attempted conspiracy.

Further, unlike the original statutory definition of assault as explained in *In re James M.*, section 653f was enacted *after* section 664. The Legislature presumably was aware of section 664, criminalizing an attempt to commit *any crime*, when it enacted section 653f. We conclude the absence of language expressly *exempting* section 653f from the ambit of section 664, in effect at the time section 653f was enacted, suggests the Legislature did not intend to foreclose convictions for attempted solicitation.

Pursuant to the plain language of sections 653f and 664, attempted solicitation of murder is a crime. We will direct that appellant's conviction be modified to a conviction of attempted solicitation of murder. This resolution of the matter renders moot appellant's claims of instructional error.

### DISPOSITION

The judgment of conviction for solicitation of murder is vacated. The matter is remanded to the trial court with instructions to enter a judgment of conviction for attempted solicitation of murder and thereupon to resentence appellant.

Dibiaso, Acting P. J., and Kalashian, J.,* concurred.

---

*Judge of the Tulare Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.